**Reverse and Remand; Opinion Filed December 21, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-00002-CV

### KHORSHID A. DIDEHBANI AND SHEEDAK, INC., Appellants
### V.
### ELLA RUTH TURNER, JOE TURNER, ANTHONY TURNER, AND ALL OCCUPANTS OF 3303 MUNDY DRIVE, DALLAS, TEXAS 75215, AND CREDIGY RECEIVABLES, INC., Appellees

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-16-01386-D**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Fillmore, and Myers
Opinion by Justice Myers

This is an appeal from a judgment entered following a trial before the court in a declaratory judgment action that concerned title to a property located at 3303 Mundy Drive, Dallas, Texas. In one issue, appellants contend the trial court erred in denying them all relief either through confirmation of ownership of the disputed property or awarding damages. We reverse and remand.

### BACKGROUND AND PROCEDURAL HISTORY

On March 30, 1966, appellees Joe and Ella Ruth Turner purchased a property located at 3303 Mundy Drive, Dallas, Texas 75215. The Turners were married at the time they purchased this property, which they used as their homestead. On December 6, 2002, First Select, Inc. obtained a judgment against Mrs. Turner for $7,732.36 in Dallas County Court at Law Number 4, cause number 02-04730-D. This judgment, which was recorded in Dallas County, arose out of an

unpaid credit card debt owed to Discover Bank. On December 13, 2004, appellee Credigy Receivables, Inc. filed a notice of assignment with the court confirming that ownership of the 2002 judgment had been assigned by First Select to Credigy.

No writs of execution were issued on the 2002 judgment from the time it was signed until it became dormant ten years later, on December 6, 2012. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a) ("If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived.").

On November 6, 2014, First Select, Inc., the named plaintiff in the original case, filed an application (in County Court at Law Number 4) for scire facias to revive the dormant judgment. *See id*. § 31.006 ("A dormant judgment may be revived by scire facias or by an action of debt brought not later than the second anniversary of the date that the judgment becomes dormant."). The application included the recorded original judgment and assignment, along with a recitation of the underlying facts and the judgment amount. First Select prayed the original judgment be revived and that the clerk be ordered to issue and deliver to Mrs. Turner a writ of scire facias commanding her to file an answer and to appear before the court to show cause why the original judgment should not be revived.

On November 12, 2014, the County Court at Law Number 4 signed an order granting the application for scire facias. The Dallas Court Clerk issued the scire facias the following day. It informed Mrs. Turner as follows:

> WHEREAS, it appears from the records of the County Court at Law No. 4 that Ella R[.] Turner, Plaintiff recovered a judgment in said court on the DECEMBER 6, 2002 against Ella R[.]Turner, Defendant (s) [1] for the sum of Seven Thousand Seven Hundred Thirty Two And 36/100——$7,732.36, plus prejudgment interest of 10% and should recover a reasonable attorney's fee, which the Court finds to be

---

[1] Appellants acknowledge that the scire facias improperly states that Ella R. Turner recovered a judgment against Ella R. Turner.

–2–

$2,577.48 which judgment the court finds to be now owned by First Select Inc.

WHEREAS, it appears from the records of said court that said judgment remains wholly unsatisfied and that ten years has elapsed since the rendition of said judgment and that Plaintiff has applied to our said court for a remedy in this behalf:

NOW, THEREFORE, you are hereby commanded to summon the said Ella R[.] Turner to be and appear before the County Court at Law No. 4, George Allen Sr. Building, 600 Commerce St., 5th Floor Dallas, Texas 75202 of Dallas County, in person or by filing a written answer with the Clerk at the courthouse by 10:00 a.m. on the Monday following the expiration of twenty days from the date of service of this Writ on them, then and there to show cause, if any they have, why the said Ella R[.] Turner ought not to have execution against them according to the force, form, and effect of the said recovery; and further, to do and receive what our said court shall then and there consider of them in this behalf.

According to the return of service, Mrs. Turner was served with the scire facias on November 14, 2014.

Neither Mrs. Turner nor anyone on her behalf responded to the scire facias or took any other action to contest it. Credigy requested an abstract of judgment and writ of execution, which was issued by the clerk on January 15, 2015. Credigy obtained a second writ of execution on April 29, 2015. The officer executing this second writ of execution unsuccessfully attempted to serve Mrs. Turner on May 26, 2015 and May 29, 2015. On both occasions, no recipient was available, and the officer left his card at the property. Mr. Turner testified[2] that their son, the tenant of the property at the time, was diligent about promptly providing all mail and notices—he would call them that day and bring it to their house. The officer returned the writ of execution to Credigy on June 9, 2015 "nulla bona."[3]

On August 20, 2015, at Credigy's request, the clerk issued another writ of execution. As attested to by Frank A. Bromley, the assistant chief deputy constable in precinct 1, the constable's office received the writ of execution on September 21, 2015. Officer Bromley prepared and posted

---

[2] Counsel for the Turners advised the court that Mrs. Turner, who suffered from dementia, did not appear to be competent to testify, and the parties agreed that Mr. Turner would testify instead.

[3] "Meaning 'no goods' in Latin, nulla bona is a form of return by a sheriff or constable upon an execution when the judgment debtor has no seizable property within the jurisdiction." *See Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 754 n.2 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

a notice of a constable's sale at the Polk Street Sub-Courthouse, Lancaster Sub-Courthouse, and at the George Allen Civil Courts Building on September 23, 2015. The Daily Commercial Record published the information contained in the notice of the constable's sale on October 9th, 16th, and 23rd of 2015. The publication contained the address of the property, the ownership interest to be sold, the time and place of the proposed sale, and other information.

The notice of the constable's sale and return indicated the notice was sent to Ella R. Turner at 3303 Mundy Drive, Dallas, Texas 75216-4640, and to 906 West Five Mile Parkway, Dallas, Texas 75224—the Turners' address after they moved out of the Mundy Drive property. The notice also stated that Mrs. Turner's interest in the property would be sold at public auction to the highest bidder on September 3, 2015:

> Said property being levied and sold will only be the property interest of the defendant, ELLA R. TURNER, in the above described property, to satisfy a judgment amount of $7,732.36, at a rate of 10.00% from the 6th day of December 2012, until paid, and attorney's fees in the amount of $2,577.45, in favor of Credigy Receivables, Inc., and $286.00 costs of suit, all further costs of executing this writ.

Neither Mrs. Turner nor anyone on her behalf took any action regarding the constable's sale. On November 3, 2015, a constable's sale was held at which the constable conveyed to appellants Khorshid A. Didehbani and Sheedak, Inc., the highest bidder, "all right, title, and interest of the judgment debtor: Ella R. Turner, in the property described above," i.e., 3303 Mundy Drive, Dallas, Texas, 75216-4640. Appellants paid $10,100, "cash in hand." Credigy confirmed at trial that it received $9,099 from appellants after the constable's office received its fee, and that Mrs. Turner received a full release of her liability under the original judgment. The constable's deed to appellants was signed on November 25, 2015.

But after purchasing the property at the constable's sale, appellants went to gain possession and discovered that Mr. and Mrs. Turner's son, Anthony Turner, was living there. Appellants sent a "Texas Notice to Comply or Quit" to the property addressed to "Joe Turner or Current

–4–

Tenant/Resident," informing them they must vacate the property within thirty days of receiving the notice. The notice stated that service of the notice was completed by delivering a copy to the resident personally. A couple of weeks later, appellants received a call from Mr. Turner confirming that he and his tenant did not intend to vacate the property.

On January 20, 2016, appellants filed an eviction proceeding against "Ella Ruth Turner or Any/All Occupants" in the justice of the peace court, precinct 1-1, Dallas County, Texas, under cause number JE16-00467H. Mrs. Turner filed an answer generally denying appellants' material allegations and alleging appellants did not maintain title to the property. Mrs. Turner's answer confirmed that she was served with the scire facias but claimed title to the property did not lie with appellants because Mrs. Turner was required to be served with the citation before the court entered its order granting the writ of scire facias, and this did not occur. Additionally, the citation purportedly served upon Mrs. Turner was defective and did not constitute valid service. As a result of these allegations, the Justice of the Peace court was unwilling to proceed with the eviction until the title issues were resolved.

On March 21, 2016, appellants filed the present action against "Ella Ruth Turner and all occupants of 3303 Mundy Drive, Dallas, Texas, 75215." This suit brought claims for trespass to try title and declaratory judgment, and asked for (1) a final judgment declaring title to the property as clearly in the name of appellants, and for issuance of a writ of possession in appellants' favor; and (2) a declaratory judgment that appellants held clear title to the property and that Mrs. Turner's claim was invalid. The petition also sought attorney's fees under section 37.009 of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. On October 26, 2016, appellants amended their petition to include Joe Turner, Anthony Turner, and Credigy as parties. The amended petition added a claim against Credigy for quantum meruit/money had and

received/unjust enrichment based on the $10,100 payment appellants made at the constable's sale, and a claim for breach of warranty and violations of the Texas Property Code.

All parties appeared and announced ready for trial on the merits before the trial court on September 22, 2017. The parties presented evidence and made arguments regarding the issues before the court—e.g., revival of the dormant judgment, title to the property, attorney's fees and damages. On September 25th, the trial court signed a judgment ordering appellants take nothing from the Turners and Credigy. Appellants filed a motion for new trial on October 25, 2017, which was denied following a hearing before the court.[4] Appellants also filed their request for findings of fact and conclusions of law, which were signed on November 3, 2017. Appellants timely filed their notice of appeal on December 21, 2017.

## DISCUSSION

In one issue with multiple sub-parts, appellants contend the original judgment was properly revived by Credigy; one hundred percent ownership of the property was conveyed to appellants; and appellants are entitled to recover their damages and reasonable and necessary attorney's fees.

Alternatively, appellants argue that "if a procedural step was skipped by Credigy or the trial court," it was harmless error because more than eight months passed between the revival of the dormant judgment and the sale of the property. The Turners had ample time to challenge the validity of the original judgment or to resolve the outstanding debt, yet did nothing. Additionally, appellants argue that if the original judgment was not properly revived, they still own the property because they were innocent purchasers. *See id.* § 34.046 (purchaser considered innocent purchaser without notice). Appellants further argue that the court's ruling violated "all notions of equity" and ignored "the statutory framework protecting" appellants.

The Turners respond that the dormant judgment was never revived because the only order

---

[4] Although proposed orders were filed, there is no signed, written order in the record denying the motion for new trial.

–6–

signed, i.e., the court's November 2014 order, did not revive the judgment. It merely allowed for issuance of the writ directing the judgment debtor to appear and show cause why the judgment should not be revived, yet no subsequent order reviving the judgment was signed. And because the dormant judgment against Mrs. Turner remained dormant and was never revived, the clerk's issuance of the writ of execution, and the constable's sale and deed of the property to appellants pursuant to that writ, were void and passed no title. The Turners also claim that because the writ itself was defective, no order reviving the judgment could have issued. In a separate brief, Credigy attacks the claims asserted against it for breach of warranty, violations of the Texas Property Code, and unjust enrichment, arguing the trial court's take-nothing judgment denying these claims should be affirmed.

The trial court's findings of fact following a bench trial have the same weight as a jury's verdict. *Inwood Nat'l Bank v. Wells Fargo Bank, N.A.*, 463 S.W.3d 228, 234 (Tex. App.—Dallas 2015, no pet.). We defer to unchallenged findings of fact that are supported by some evidence. *Id.* at 235. However, the trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* Accordingly, we review the trial court's conclusions of law de novo. *Id.* We will uphold the trial court's judgment, even if we determine a conclusion of law is erroneous, if the judgment can be sustained on any legal theory supported by the evidence. *Id.*

As we noted before, a dormant judgment can be revived by scire facias or an action of debt brought within two years of the date the judgment becomes dormant. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.006. In determining whether to issue a writ of scire facias to revive a dormant judgment, a trial court considers the date of the judgment, evidence of any writs of execution issued on the judgment, and the date of the motion to revive the judgment scire facias. *Cadle Co. v. Rollins*, 01–09–00165–CV, 2010 WL 670561, at *2 (Tex. App.—Houston [1st Dist.] Feb. 25, 2010, no pet.) (mem. op.); *Thomas v. Poonen*, No. 05–00–01233–CV, 2001 WL 755638, at *2

(Tex. App.—Dallas July 6, 2001, no pet.) (not designated for publication); *see also Trad v. Colonial Coins, Inc.*, No. 14–02–00172–CV, 2003 WL 124680, at * (Tex. App.—Houston [14 Dist.] Jan. 16, 2003, no pet.) (mem. op.). "A scire facias proceeding is a non-evidentiary hearing for which there is no need for findings of fact and conclusions of law." *Cadle*, 2010 WL 670561, at *2 (citing *Thomas*, 2001 WL 755638, at *3).

The trial court's findings of fact from the bench trial are not challenged in this appeal, but appellants argue the conclusions of law are in error. They are as follows:

1. Plaintiffs' claim to ownership of the Property in question is invalid as a matter of law because the 2002 Judgment on which the purported constable's execution sale was based was dormant and was never properly revived before the writ of execution was issued and the constable's sale occurred.

2. Because the 2002 Judgment, upon which the clerk issued the writ of execution under which authority the constable purported to sell the Property, was never revived, the August 20, 2015 writ of execution was void and the constable's sale of the Property to Plaintiffs was void and conveyed no title to Plaintiffs.

3. The dormant 2002 Judgment was never revived because the November 12, 2014 Order did not revive the 2002 Judgment. The Order only allowed for the Writ of Scire Facias to issue. No further Order actually reviving the Judgment was signed.

4. The instrument served on Ella Ruth Turner on November 14, 2014, entitled "Scire Facias to Revive Judgment" did not revive the dormant 2002 Judgment.

5. The constable's deed to Plaintiffs did not contain any warranty of title and was as a matter of law no more than a quitclaim deed.

6. Plaintiffs were not entitled to the protections of a bona fide purchaser because, as a matter of law, purchasers under a quitclaim deed are not innocent purchasers without notice.

7. Plaintiffs' claim based upon unjust enrichment for recovery of insurance premiums and taxes Plaintiffs paid for the Property fails because there was no evidence that the Turners were unjustly enriched by such payments.

8. Plaintiffs' action for declaratory judgment (and claim for attorney's fees) is unfounded because a trespass to try title action is the sole method for determining a disputed title to realty and no attorney's fees may be awarded in a trespass to try title action.

9. Defendants Joe Turner and Ella Ruth Turner are entitled to an order and judgment quieting title to the Property in their favor and declaring the constable's deed to

Plaintiffs void and otherwise directing that Plaintiffs take nothing of the Turners.

The Turners contend that since the 2002 judgment remained dormant and was never revived, no duty existed on their part to contest or otherwise dispute a void constable's sale utilizing a void writ of execution based on the dormant judgment. Yet, it has long been held that an execution issued on a dormant judgment is not void, merely *voidable*, "so that a purchaser at an execution sale under such a judgment takes a valid title." *Williams v. Masterson*, 306 S.W.2d 152, 156 (Tex. Civ. App.—Houston 1957, writ ref'd n.r.e.); 34 TEX. JUR. 3d *Enforcement of Judgments* § 19 (2018) ("Although an execution may not properly issue on a dormant judgment, an execution issued on a dormant judgment is not void but is merely voidable. Thus, a purchaser at a sale based on an execution issued on a dormant judgment takes good title as against a collateral attack."); 2 TEX. PRAC. GUIDE CIVIL TRIAL *Satisfaction, Cancellation, or Execution of Judgment* § 18: 172 (2018) ("[A]n execution issued on a dormant judgment is not void, merely voidable, such that a purchaser at an execution sale under the judgment takes a valid title."); *see also In re Fitzgerald*, 429 S.W.3d 886, 895 (Tex. App.—Tyler 2014, orig. proceeding). "'It follows that a dormant judgment does not authorize the issuance of an execution. But a writ issued under a dormant judgment is not void or subject to collateral attack. It is sufficient until set aside to empower the sheriff to sell property and pass title to the purchaser." *Williams*, 306 S.W.2d at 156 (quoting 18 TEX. JUR. *Executions* § 38, p. 576).

The record in this case shows that Mrs. Turner received actual notice of the scire facias, which put her on notice that she needed to take prompt action to challenge the revival of the original judgment, yet she did nothing, asserted no defense, and otherwise made no effort to contest the revival of the original judgment. There is no requirement that a non-evidentiary hearing must be held if the judgment debtor fails to respond. Although the scire facias was entered prior to serving Mrs. Turner, she was in a position to challenge the revival of the dormant judgment, but

because she sat on her rights and took no action, the judgment creditor was free to pursue issuance of the writ of execution to enforce the original judgment—regardless of whether the 2002 judgment remained dormant and was never revived.  A writ of execution issued under a dormant judgment is *voidable*, not void; and it is sufficient until set aside to empower the sheriff to sell property and pass title to the purchaser.  *See Williams*, 306 S.W.2d at 156.

We sustain appellants' issue, in part.  The trial court erred in concluding the August of 2015 writ of execution was void and that the constable's sale of the 3303 Mundy Drive property to appellants was void and conveyed no title to appellants.  We reverse the trial court's September 25, 2017 take-nothing judgment and remand this case for further proceedings consistent with this opinion.  Because of this disposition, we will not address appellants' remaining arguments.[5]

/Lana Myers/
LANA MYERS
JUSTICE

180002F.P05

---

[5] We express no opinion on whether 100 percent ownership of the property was conveyed to appellants, whether they were entitled to recover their attorney's fees, or appellants' alternative claims for quantum meruit/unjust enrichment.



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KHORSHID A. DIDEHBANI AND
SHEEDAK, INC., Appellants

No. 05-18-00002-CV      V.

ELLA RUTH TURNER, JOE TURNER,
ANTHONY TURNER, AND ALL
OCCUPANTS OF 3303 MUNDY DRIVE,
DALLAS, TEXAS 75215, AND
CREDIGY RECEIVABLES, INC.,
Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-16-01386-D.
Opinion delivered by Justice Myers.
Justices Lang-Miers and Fillmore
participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion. It is **ORDERED** that appellant KHORSHID A. DIDEHBANI AND SHEEDAK, INC. recover their costs of this appeal from appellees ELLA RUTH TURNER, JOE TURNER, ANTHONY TURNER, AND ALL OCCUPANTS OF 3303 MUNDY DRIVE, DALLAS, TEXAS 75215.

     Judgment entered this 21st day of December, 2018.